UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

SHAWN M. BERRY, 349-11-16298,

              Plaintiff,

  - against -

CITY OF NEW YORK DEPARTMENT OF
CORRECTIONS, CO. CASTRO #7800,
and C.O. L. BECKWITH # 1983,

              Defendants.

------------------------------------------X

12 Civ. 7819 (RWS)

OPINION

A P P E A R A N C E S:

    <u>Pro Se</u>

    SHAWN M. BERRY
    13-A-5402
    Great Meadow Correctional Facility
    Box 51
    Comstock, NY 12821-0051

    <u>Attorneys for the Defendants</u>

    JEFFREY D. FRIEDLANDER
    Acting Corporation Counsel for the City of New York
    100 Church Street
    New York, NY 10007
    By: James Horton, Esq.

**Sweet, D.J.**

Defendants City of New York Department of Corrections (the "DOC") and Correction Officers Castro ("Castro") and Beckwith ("Beckwith") (collectively, "Defendants") have moved pursuant to Federal Rules of Civil Procedure 56 for summary judgment to dismiss the *pro se* Plaintiff Shawn M. Berry's ("Berry" or "Plaintiff") Second Amended Complaint ("SAC"). Based on the conclusions set forth below, Defendants' motion is granted.

**Prior Proceedings**

This action was initiated by Plaintiff on October 18, 2012 with the filing of the initial Complaint arising out of an incident that allegedly occurred on August 30, 2012 at the Mental Health Assessment Unit for Infracted Inmates ("MHAUII") at the George R. Vierno Center ("GRVC") at Rikers Island. (SAC ¶ II.D). The Plaintiff filed an Amended Complaint on January 2, 2013, and the SAC on March 20, 2013. The SAC alleges a 42 U.S.C. §1983 claim against the Defendants for failing to protect him from another inmate. Defendants submitted their Answer on June 28, 2013. Plaintiff's deposition was taken on November 20, 2013, and fact discovery was ordered completed on November 25, 2013.

1

Defendants filed the instant motion for summary judgment on January 9, 2014. Briefing was submitted and the matter was marked fully submitted on March 12, 2014.

**The Facts**

The facts have been set forth in Defendants' Rule 56.1 Statement and Plaintiff's Statement of Undisputed Facts contained in his Declaration In Opposition to Defendants' Motion for Summary Judgment. The facts described below are undisputed except as noted.

Berry was a detainee at MHAUII. On August 30, 2012 at approximately 12:00 p.m., Plaintiff was assisting with the lunchtime food service in the MHAUII. According to Plaintiff, he was working as a Suicide Preventive Aide in the MHAUII, but was ordered to work out of his job description to assist with the lunch-time feeding.

While assisting non-party Correction Officer Velez ("Velez") with the lunch feeding, Plaintiff was punched in the head by another inmate, Oscar Punter ("Punter"). The attack on Plaintiff by Punter was a surprise attack. Upon being punched by Punter, Plaintiff began to "defend" himself by "swinging crazy," and threw three or four punches in the direction of Punter.

According to Plaintiff, when he began to defend himself he was scared and in shock pain.

Additional correction officers arrived on the scene and issued orders for the two inmates to stop fighting. Plaintiff was unable to hear these commands because of the commotion, and Plaintiff continued to throw punches at Punter until he was sprayed with OC spray by Beckwith. According to Plaintiff, none of the correction officers at the scene gave Plaintiff an order to stop use of force. Plaintiff's version of the events contends that Beckwith came from behind Plaintiff and deliberately sprayed Plaintiff with OC spray in both of Plaintiff's eyes. Suicide Preventive Aid and House Infracted Inmates wear different clothing in the MHAUII (gray jumpsuit and bright orange jumper, respectively), and according to Plaintiff, Beckwith witnessed Plaintiff in gray defending himself from Punter before he chose to spray Plaintiff.

Plaintiff was then taken to decontamination, where the OC spray residue was rinsed from his body. According to Plaintiff, he was then taken to see a doctor, but was issued eyeglasses weeks later.

At the time Plaintiff was sprayed with OC, Plaintiff was

3

still fighting with Punter. Prior to the fight between Plaintiff and Punter, Plaintiff had never had any interaction or exchanged words with Punter.

**The Applicable Standards**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249. Moreover, if the evidence for the nonmoving party is a mere scintilla or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. A fact is "material" only if it will affect the outcome of the suit under

4

applicable law, and such facts "properly preclude the entry of summary judgment." *Id.* at 248. Disputes over irrelevant facts will not preclude summary judgment. *Id.* The goal is to "isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

While the moving party bears the initial burden of showing that no genuine issue of material fact exists, *Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005), in cases where the non-moving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would

5

be sufficient to support a jury verdict in his favor.").

**The Motion For Summary Judgment Is Granted**

*The Plaintiff's Failure To Protect Claim Against Beckwith And Castro Is Dismissed*

The Supreme Court has found that "[a] prison official's 'deliberative indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (19994); *Avincola v. Maldonado*, No. 04-3529-pr, 2005 U.S. App. LEXIS 25423, at *3 (2d Cir. Nov. 22, 2005)). To successfully plead a failure to protect claim, a plaintiff must show that the deprivation is so sufficiently serious that it results in a denial of "the minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted), and that the prison officials acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted); *Farmer*, 511 U.S. at 832 (prison officials must provide "humane conditions of confinement" and take "reasonable measures to guarantee the safety of the inmates.") (internal quotation marks and citation omitted)). Prison officials may neither deprive a prisoner of "basic human needs, *e.g.*, food, clothing, shelter, medical care, and reasonable safety," nor

6

expose an inmate to conditions that "pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 32, 35 (1993) (citation omitted); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d. Cir. 2002); *Sharriff v. Coombe*, 655 F. Supp. 2d 274, 297 (S.D.N.Y. 2009). The deliberate indifference standard consists of both a subjective prong and an objective prong. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *see also Buffaloe v. Fein*, No. 12 Civ. 9469 (GBD) (AJP), 2013 U.S. Dist. LEXIS 153840, at *11 (S.D.N.Y. Oct. 24, 2013).

To satisfy the objective prong, plaintiff must show that the "alleged deprivation . . . in objective terms, [was] sufficiently serious." *Hathaway*, 37 F.3d at 66. The Second Circuit has defined sufficiently serious as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* "[T]he inmate must show that the risk of future harm is 'so grave that it violates contemporary standards of decency.'" *Braxton v. Nichols*, 08 Civ. 08568 (PGG), 2010 U.S. Dist. LEXIS 25652, at *11 (S.D.N.Y. Mar. 18, 2010) (quoting *Helling*, 509 U.S. at 36). Plaintiff must demonstrate that this grave harm was "actual or imminent." *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003); *see also Carr v. Canty*, No. 10 Civ. 3829 (JPO), 2012 U.S. Dist. LEXIS 117204, at *8 (S.D.N.Y. Aug. 16, 2012).

7

The "subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" see *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at 835); *see also Cole v. Fischer*, No. 10-2548-pr, 2011 U.S. App. LEXIS 6182, at *2 (2d Cir. Mar. 25, 2011) (equating the necessary state of mind to that of "criminal recklessness"); *Whitfield v. O'Connell*, 402 F. App'x 563, 565 (2d. Cir. 2010) (same). To be found "sufficiently culpable," the prison official must "know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834, 837; *Ventura v. Sinha*, 379 F. App'x 1, 3 (2d. Cir. 2010).

Plaintiff has failed to demonstrate either the objective or subjective prongs. With respect to the objective prong, Plaintiff cannot establish that he was incarcerated under conditions positing a substantial risk of serious harm as a matter of law. Substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding

8

the altercation or a request by plaintiff to be separated from the attacker. *See Hopkins v. Allard*, No. 08-CV-0001 (DNH) (DEP), 2010 U.S. Dist. LEXIS 114368, at *74 (N.D.N.Y. Aug. 23, 2010) (citing *Desulma v. City of New York*, No. 98 Civ. 2078 (RMB) (RLE), 2001 U.S. Dist. LEXIS 9678, at *21 (S.D.N.Y. Jul. 6, 2001)). Here, Plaintiff admits that he had never spoken to his attacker prior to the incident on August 30, 2012, and there were no prior altercations between Plaintiff and Punter. Consequently, there is no genuine issue of material fact as to whether Plaintiff faced a substantial risk of harm at MHAUII on the day of the incident.

With regards to the subjective element, a reasonable jury cannot conclude from the evidence in the record that either Beckwith or Castro knew that Plaintiff faced a substantial risk of harm and disregarded that risk. Plaintiff has provided "no evidence that [the Defendants were] aware of any prior acts of violence committed against [P]laintiff or any other inmates." *Hopkins*, 2010 U.S. Dist. LEXIS 114368, at *75. Plaintiff never complained to any correction officer, expressed concern for his safety or otherwise made known of any impending danger from Punter to correction officers. Moreover, Plaintiff readily concedes that Punter's attack was a surprise. As such, the record does not allow a conclusion that Beckwith or Castro "knew of and disregarded a substantial risk of serious harm to [P]laintiff posed by" Punter.

9

*Id.*

The evidence raises no genuine issue of fact regarding the objective and subjective prongs of deliberate indifference, and no reasonable jury could find deliberate indifference with the evidence currently in the record. There is no genuine issue of fact for trial. Given such, Plaintiff's failure to protect claim against Beckwith and Castro is dismissed.

<u>*Plaintiff's Excessive Force Claim Is Dismissed*</u>

To set forth a claim for excessive force, a plaintiff must sufficiently allege that, viewed subjectively, a defendant had a wanton state of mind at the time of the alleged incident and that, by objective standards, the effect of a defendant's conduct was sufficiently serious. *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000). Both the subjective and objective standards must be met. *See Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

The subjective component requires a plaintiff to show that a defendant's conduct was not "applied in a good faith effort to maintain or restore discipline" but rather "maliciously or sadistically to cause harm." *Rosales v. Fischer*, 07 Civ. 10554

10

(LAP)(DFE), 2009 U.S. Dist. LEXIS 35033, at *23 (S.D.N.Y. Mar. 31, 2009) (citing *Hudson*, 503 U.S. at 7). The defendant must have acted with "a sufficiently culpable state of mind," meaning that he acted in a "wanton manner in light of the particular circumstances surrounding the challenged conduct." *McCrory v. Belden*, No. 01 Civ. 0525(MHD), 2003 WL 22271192, at *5 (S.D.N.Y. Sept. 30, 2003) (internal quotation marks omitted).

Objectively, a plaintiff must show that the harm incurred was more than *de minimis*. *Rosales*, 2009 U.S. Dist. LEXIS 35033, at *24. Not "ever malevolent touch by a prison guard gives rise to a federal cause of action," *Hudson*, 503 U.S. at 9, and "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). However, when a prison official acts "maliciously and sadistically", the objective component is satisfied provided that the force applied was more than *de mimimis* or else was of a nature "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9-10. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant physical injury is evident." *Hudson,* 503 U.S. at 6-7; see *Sims,* 230 F.3d at 21; *Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir. 1999).

11

It is uncontroverted that Beckwith used OC spray to subdue Plaintiff. The use of pepper spray "constitutes a significant degree of force," *Tracy v. Freshwater,* 623 F.3d 90, 98 (2d Cir. 2010), and can amount to an excessive use of force. *See, e.g., United States v. Praisner,* No. 3:09cr264 (MRK), 2010 WL 2574103 (D. Conn. Apr. 27, 2010) (denying motion to dismiss indictment premised on excessive force where pretrial detainee "was sprayed six times on four separate occasions over approximately 40 minutes, and was not decontaminated during that period"). However, if the force was "applied in a good-faith effort to maintain or restore discipline, it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law." *Adilovic v. Cnty. of Westchester*, No. 08 Civ. 10971(PGG), 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011) (internal citation omitted) (quoting *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

Plaintiff has not alleged nor puts forward any evidence that suggests that the application of OC spray was done in a way other than "to ensure the compliance of an uncooperative . . . inmate." *Id.,* at *6. Plaintiff contends that he was "swinging crazy" when Beckwith responded to the scene and made the decision to spray the Plaintiff. Plaintiff asserts that none of the

12

correction officers that arrived on the scene gave plaintiff an order to stop use of force, Pl. Decl. ¶ 14, but Plaintiff, in his deposition, indicated that in the middle of the fight it may have been near impossible for correction officers to verbally issue commands audible to Plaintiff. *See* Pl. Dep. Tr. 31:7-22 ("[W]hen an incident like this is going on . . . that's noise on top of noise, so you could come in and say whatever you want to say, I won't hear it, nobody else will hear it . . ."). Plaintiff's allegation is belied by Castro's report of the incident, made on the same day as the incident, which states that Castro "gave several direct orders for both inmates to stop fighting" but that Punter and Plaintiff ignored Castro's orders. (SAC Ex. B).

While no evidence has been provided to the Court as to the length or amount of OC spray applied by Beckwith on Plaintiff, Plaintiff's testimony in his deposition suggests that Beckwith's application was not excessive. Plaintiff noted in his deposition that correction officer Velez grabbed Punter at one point in the fight, incapacitating Punter's ability to defend himself, and Plaintiff became the "aggressor" as he continued to wildly throw punches at Punter. *See* Pl. Dep. Tr. 30:9-25. Beckwith applied the OC spray on Plaintiff shortly thereafter. In addition, no evidence has been presented that suggests anything excessive about the application of the OC spray. While Punter and Plaintiff were

13

wearing different colored clothing, Plaintiff was attacking Punter at the same time as Velez was restraining Punter. Plaintiff has provided no evidence or allegations as to why Beckwith should have assumed, based on the fact that two inmates were fighting with different colored clothing, that application of OC spray was not necessary or that Plaintiff was not the "aggressor."

Nothing in the record suggests that Beckwith acted in a way other than to "ensure compliance of an uncooperative . . . inmate," *Adilovic*, 2011 WL 2893101, at *6, and there is no genuine issue of material fact as to whether Beckwith acted maliciously or sadistically to cause Plaintiff harm. Accordingly, the motion to dismiss must be granted on this issue. *See, e.g., Kopy v. Howard*, Civ. No. 9:07-CV-417 (DNH/RFT), 2010 WL 3808677, at *3 (N.D.N.Y. Aug. 11, 2010) ("Thus, by Plaintiff's own admission, he refused several direct orders to return to his cell and, as a consequence, was forcibly moved there by use of pepper spray. There being absolutely no evidence or indication of bad faith on the part of Defendants, this claim must fail.").

> *Beckwith And Castro Are Entitled To Qualified Immunity*

Under 42 U.S.C. § 1983, a public official is entitled to qualified immunity if her acts did not violate clearly established

14

rights of which a reasonable officer would have known, or if she reasonably believed that her conduct did not violate those rights. *See* Harlow v. Fitzgerald, 457, U.S. 800, 818 (1982); *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998); *Brown v City of Oneonta*, N.Y., Police Dept., 106 F.3d 1125, 1130-31 (2d Cir. 1997). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Spavone v. N.Y. State Dep't of Corr.*, 719 F.3d 127, 133 (2d Cir. 2013) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted) (emphasis removed from original). It protects government employees from civil liability where performance of their discretionary functions does not violate clearly established statutory or constitutional rights of which a reasonable person should have known, or if the official reasonably believed that her conduct did not violate those rights. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1992). It protects "all but the plainly incompetent or those who knowingly violate the law." *Saucier v. Katz*, 553 U.S. 194, 202 (2001).

In the summary judgment phase of a proceeding, dismissal will be granted on the basis of qualified immunity only if "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively reasonable for

15

the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)). "[i]f any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Lennon*, 66 F.3d at 420.

Beckwith and Castro's actions were objectively reasonable. Plaintiff admits that the attack upon him by Punter was a surprise attack.[1] At one point in the fight, Velez had restrained Punter while Plaintiff continued his counterattack. No other evidence or allegation have been provided by Plaintiff that suggests that Beckwith and Castro believed that they were acting in a way that clearly violated an established federally protected right. Given the situation, no reasonable jury could find that the Defendants actions were objectively unreasonable, and Castro and Beckwith are entitled to qualified immunity.

### The Claims Against The DOC And City Are Dismissed

---

[1] Courts in this District have denied deliberate indifference claims based upon surprise attacks. *See Fernandez v. New York City Dep't of Corr.*, 2010 U.S. Dist. LEXIS 12499, at *5 (S.D.N.Y. Aug. 21, 2001); *Zimmerman v. Macomber*, 2001 U.S. Dist. LEXIS 12499, at *5 (S.D.N.Y. Aug. 21, 2001) (same); *Grant v. Burroughs*, 2000 U.S. Dist. LEXIS 12917, at *9 (S.D.N.Y. Sept. 8, 2000) (same).

DOC is an agency of the City of New York (the "City") and lacks an independent legal existence. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any laws shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. "[A]s an agency of the City of New York, the DOC is not a suable entity." *White v. Vance*, No. 10 Civ. 6142 (NRB), 2011 U.S. Dist. LEXIS 67799, at *14 (S.D.N.Y. June 21, 2011). Accordingly, the claims against DOC is dismissed.

Plaintiffs contend that the Court should construe the SAC as including a claim against the City given the Plaintiff's *pro se* status, citing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978). A *pro se* plaintiff's complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*, 551 U.S. at 94, 127 S. Ct. at 2200. The Court will consider the SAC as alleging a claim against the City, but even liberally construed, Plaintiff's claims must be dismissed against

17

the City.

It is not clear from the SAC what exact claims it is bringing against the City. Liberally construed, and supported by his citation *Monell*, Plaintiff seeks to bring a *Monell* § 1983 claim against the City. In a *Monell* claim, the City can be held liable "if a plaintiff can plead and prove both (1) the existence of a municipal policy or custom, and (2) that the policy or custom directly caused the constitutional violation." *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 418, 429 (S.D.N.Y. 2012). An employment relationship between an offending officer and the municipality is insufficient to establish liability. *Id.*

Plaintiff has not alleged and the record has evidenced no facts regarding the existence of a municipal policy or custom that caused a constitutional violation. "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation." *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 545 (S.D.N.Y. 2005) (quoting *McAllister v. New York City Police Dep't*, 49 F.Supp.2d 688, 705 (S.D.N.Y. 1999). Here, Plaintiff lacks evidence or even an allegation of pattern or practice of excessive application of OC spray. Discovery has ended and there is no evidence adduced by Plaintiff as to any such

pattern or practice. Moreover, as concluded above, no constitutional violations can be found as a matter of law. Given the lack of evidence, there is no issue of material fact as to whether a pattern or practice regarding excessive application of OC spray existed, and the claim against the City must be dismissed.

**Conclusion**

Based on the conclusions set forth above, Defendants' motion for summary judgment and dismissal of the SAC is granted.

It is so ordered.

**New York, NY**
**May 22, 2014**

_____
ROBERT W. SWEET
U.S.D.J.

19